FORM 13. Informal Opening Brief (Court of Appeals for Veterans Claims Cases)    Form 13 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

**Case Number:** 2024-1049

**Short Case Caption:** Vuksich v. McDonough

**Name of Appellant:** John M. Vuksich

---

**Instructions:** Read the Guide for Unrepresented Parties before completing this form. Answer the questions as best as you can. Attach additional pages as needed to answer the questions. This form and continuation pages may not exceed 30 pages.

Attach a copy of the opinion, order, and/or judgment of the Court of Appeals for Veterans Claims. You may also attach other record material as an appendix. Any attached material should be referenced in answer to the below questions. Please redact (erase, cover, or otherwise make unreadable) social security numbers or comparable private personal identifiers that appear in any attachments you submit.

---

1. Have you ever had another case in this court?    ☐ Yes    ☑ No
   If yes, state the name and number of each case.

2. Did the Court of Appeals for Veterans Claims decision involve the validity or interpretation of a statute or regulation?    ☑ Yes    ☐ No

   If yes, what are your arguments concerning those issues?

   See BLOCK 2, page 4 of 26 pages

3. Did the Court of Appeals for Veterans Claims decide constitutional issues?
   ☑ Yes    ☐ No

   If yes, what are your arguments concerning those issues?

   > See BLOCK 3, page 11 of 26 pages

4. Did the Court of Appeals for Veterans Claims fail to decide any other issue
   correctly?    ☑ Yes    ☐ No

   If yes, how?

   > See BLOCK 4, page 19 of 26 pages

5. Are there other arguments you wish to make?    ☑ Yes    ☐ No
   If yes, what are the arguments?

   > See BLOCK 5, page 22 of 26 pages

6. What action do you want this court to take in this case?

See BLOCK 6, page 24 of 26 pages

Date: 11/17/2023

Signature: _____

Name: John M. Vuksich

**BLOCK 2, FORM 13 continued.**

Does the case law interpreting 5 USC 706 and 28 USC 1361 control the interpretation of 38 USC 7261? In contradiction of this Court's decision in *Martin v. O'Rourke,* 891 F.3d 1338 (Fed. Cir. 2018) (the *Martin* Court), Appellant argues the application of the case law of 5 USC 706(1) is an inappropriate analogy for interpretation of 38 USC 7261(a)(2). More specifically, the four corners of "compel action" available to Article III courts per 28 USC 1361 are far more limited by the Constitution and statute than the "compel action" available to the Article I Court of Appeals for Veterans Claims (Veterans Court) under 38 USC 7261.

The history of the Veterans Court provided at Appendix Tab 1 is taken from the Veterans Court website[1]. Until 1988 review of veterans benefit decisions by the Secretary where in "splendid isolation" from Article III judicial review, including review under 5 USC 706(1) and 28 USC 1361. Congress eventually chose to provide judicial protection to veterans claims not by the waiving of sovereign immunity with the grant of Article III courts' jurisdiction to act under those existing statute, but rather by an Article I court whose jurisdiction Congress newly created under 38 USC 7252 within the scope of 38 USC 7261. From the Veteran Court's website, the intended beneficiary of 38 USC 7261 is

---

[1] http://m.uscourts.cavc.gov/History.php

clearly the veteran and should not be a shield of incompetence for the Secretary.

"Offsides" in soccer is different than "offsides"in football.  The words "compel action" are common to both 5 USC 706 and 38 USC 7261 but the respective statutory contexts are radically different.  The purpose of the Administrative Procedures Act (APA) is to establish basic standards for good government within a government built upon the principle of the separation of powers and the APA is enforced  by Article III courts.  The Veterans' Judicial Review Act as modified by the Veterans Programs Enhancement Act created the Veterans Court under the public rights doctrine of the Constitution not for government-wide application, but rather for the laser-focused mission of the judicial protection of the veteran via an Article I court from the improper delay or denial of statutory disability benefits by the Secretary.  See *Murray's Lessee et al. v. Hoboken Land and Improvement Co* 59 U.S. (18 How.) 272 (1855) (Public right).  Appellant argues that the Congressional scheme that Congress chose to provide judicial review to veterans claims intended to retain the "splendid isolation" from Article III courts and 5 USC 706(1).

The *Martin* Court's adoption of *TRAC* relied upon this: "Thus, it is the [Congressional] Committee's intention that the court shall have the same authority as it would in cases arising under the APA" *Martin* 1338, 1343   But Congress never voted on the "committee's intention".  Rather, Congress voted on the text of

Public Law No. 101-237, § 602(c), 103 Stat. 2062, 2095 (1989) which makes no linkage of veteran benefits to the APA, with the entire portion of the public law reading in its entirety: "Section 4061(a)(2) is amended by inserting "or unreasonably delayed" after "withheld"." Justice Scalia explained why he opposed ready resort to legislative history: "Judges interpret laws rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 452-53 (1987) (concurring).

The Article I Veterans Court is the court of original jurisdiction for veterans to seek relief from unreasonable delay claims. 38 USC 7261 reads: "(a)In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall— (2)compel action of the Secretary unlawfully withheld or unreasonably delayed;" The statute allows the Article I Veterans Court to take any action "to the extent necessary" to fix unreasonable delay. Statutory relief in the form of mandamus is not specified. In contrast compare the actions available to the Article III district court under 5 USC 706 and 28 USC 1361; 28 USC 1361 restricts the corrective mechanism to "action in the nature of mandamus". This direct statutory language makes interpretation of "compel action unreasonably delayed" under 28 USC 1361 and 38 USC 7261 two separate, unrelated issues. Interpretation of 38 USC 7261 under the case law

of 5 USC 706 is inappropriate.

Appellant served on active military duty for over 20 years and suffered disability compensable per 38 USC 1110. For 2 plus years the Secretary has unreasonably delayed a hearing before the Board of Veterans Appeals (BVA). Appellant petitioned the Veterans Court as the court of original jurisdiction for relief of unreasonable delay under 38 USC 7261; Appellant did not petition a district court, a court that lacks jurisdiction over veterans claims, for relief under 5 USC 706 and 28 USC 1361.   While the administrative format for the requested relief was styled as a petition for writ of mandamus, the Veterans Court is sufficiently capable of interpreting Appellant's petition as a plea for relief of unreasonable delay, regardless of the document format used.   See *Roberson v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001) (Sympathetic consideration required for all *pro se* veteran's filings)   The *Martin* Court redirected the pleadings of those appellants seeking relief from unreasonable delay under 38 USC 7261 to a question of their entitlement to a writ.   With this redirection, the *Martin* Court concluded: "Mandamus is thus an appropriate procedural vehicle to address claims of unreasonable delay in this context." *Martin* 1338, 1343   Continuing, the *Martin* Court saw "no reason to articulate a hard and fast rule with respect to the point in time at which a delay becomes unreasonable." *Martin* 1338, 1346   Concluding, the Martin Court held "Accordingly, today we adopt the *TRAC* standard as the

appropriate standard for the Veterans Court to use in evaluating mandamus petitions based on alleged unreasonable delay." *Martin* 1338, 1348 These mandamus declarations of the *Martin* Court seem incompatible with long standing case law of mandamus as explained by the Department of Justice in their civil resource manual:

> The power of a district court to compel official action by mandatory order is limited to the enforcement of nondiscretionary, plainly defined, and purely ministerial duties. See Decatur v. Paulding, 39 U.S. (1 Pet.) 496, 514-17 (1840); Work v. Rives, 267 U.S. 175, 177 (1925); Wilbur v. United States, 281 U.S. 206, 218 (1930). An official action is not ministerial unless "the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command." Wilbur v. United States, supra; See United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420 (1931); ICC v. New York, N.H. & H.R. Co., 287 U.S. 178, 204 (1932); United States ex rel. Girard Trust Co. v. Helvering, supra; Will v. United States, 389 U.S. 90 (1967); Donnelly v. Parker, 486 F.2d 402 (D.C. Cir. 1973). "But where there is discretion . . . even though its conclusion be disputable, it is impregnable to mandamus." United States ex rel. Alaska Smokeless Coal Co. v. Lane, 250 U.S. 549, 555 (1919)[2]

The "*TRAC* standard" adopted by the *Martin* Court is not a "standard" but rather an analytical method "where there is discretion" involved in reaching a "disputable conclusion" whether the delay is unreasonable or not. The *Martin* Court wrote: "The first TRAC factor—that "the time agencies take to make decisions must be governed by a 'rule of reason[3],' " TRAC , 750 F.2d at 80 —is

---

[2] https://www.justice.gov/jm/civil-resource-manual-215-mandamus

[3] The rule-of-reason is a legal doctrine concerning securities law. Its origin in TRAC 750 F.2d addressed securities issues regarding AT&T. Appellant is

considered to be the most important factor in some circuits. " *Martin* 1338, 1345

The *Martin* Court confirms its invocation of unbounded discretion: "This "rule of

reason" inquiry is best left to the discretion of the Veterans Court." *Martin* 1338,

1346  Where there is discretion, the Supreme Court said over a century ago "it is

impregnable to mandamus".

This Court "explained in *Mote*, we have not "resolve[d] specifically where

and how *TRAC* fits in" with the *Cheney* analysis, nor do we need to resolve such a

question today.  Id. at 1344 n.6; see Martin, 891 F.3d at 1343 n.5" *Kramer v.

Wilkie*, No. 2020-2112, 10 (Fed. Cir. Jan. 11, 2021)  As the Veterans Court wrote

in their Order, the first prong of the *Cheney* test is the "lack of alternative means to

obtain the desired relief", and the DOJ's manual is consistent stating: "Mandamus

is not available, if a statutory method of review is authorized. *Wellens v. Dillon*,

302 F.2d 442 (9th Cir.), app. dism., 371 U.S. 90 (1962)"  But 38 USC 7261 is

exactly the statutory method of review available to the veteran to seek relief from

unreasonable delay, and the Article I Veterans Court is the statutorily designated

forum for the veteran.  *TRAC* does not "fit in" with *Cheney*; *TRAC* violates *Cheney*

because a statutory remedy is available to the veteran via the Veterans Court as the

court of original jurisdiction over the question.  The source of this confusion is

---

unable to discover any legal origin of a veterans-rule-of-reason.  Rule-of-reason in
the veterans context seems simply a slogan to justify unbounded discretion in
violation of Supreme Court mandamus precedent.

the failure to recognize that 38 USC 7261 is not just the step-child of 5 USC 706, that unreasonable delay cannot be remedied under 28 USC 1361, and that the Veterans Court is an Article I court created by Congress with powers specifically defined by Congress (e.g. resolve unreasonable delay claims) directed to the execution of one or more of its legislative powers (e.g. the creation/award/implementation of veteran disability benefits).

Rather than clarify "unreasonable delay", the *Martin* Court builds on the mandamus foundation that results in the disjointed adoption the ambiguous "egregious" standard as their "hard and fast rule" for defining "unreasonable" writing: "In TRAC , the D.C. Circuit explained that the overarching inquiry in analyzing a claim of unreasonable delay is "whether the agency's delay is so egregious as to warrant mandamus." TRAC , 750 F.2d at 79." *Martin* 1338, 1344 And in compliance with the *Martin* Court, the No. 23-3416 Order of the Veterans Court dated June 23, 2023 repeats the *Martin* Court's substitution of the statutory "unreasonable" standard with the much higher judicial "egregious" mandamus standard.

Appellant did not waive the statutory delay standard of "unreasonable" for the mandamus standard of "egregious". Is the standard for a veteran's relief from the Secretary's inaction now raised from the statutory requirement of "unreasonable delay" explicitly established by Congress in 38 USC 7261 to now

requiring the veteran to prove a more rigorous "egregious delay" required for an Article III court's writ of mandamus acting under the APA and All Writs Act?[4]

Ironically, the *Martin* Court overturned the Veterans Court's rule of unreasonable delay established in *Costanza v. West* , 12 Vet.App. 133 (1999) because it required a "delay so extraordinary", a standard that the *Martin* Court concluded was "insurmountable". *Martin* 1338, 1345 But "egregious" is "delay so extraordinary", just with a different word. This judicial move of the statutory goalpost seems contrary to *McKnight v. Gober*, 131 F.3d 1483, 1485 (Fed. Cir. 1997) (noting that, where statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor" (citing *Brown v.Gardner*, 513 U.S. 115, 118 (1994)). Resolution of the interpretive doubt of the statutorily-ambiguous "unreasonable" as meaning the judicially-ambiguous "egregious" is not an interpretation in the veteran's favor.

But there is good news. As will be explained in BLOCK 4 (failure to decide other issues), two years post-*Martin* the Secretary has provided a perfectly workable standard of "unreasonable" delay, a standard twice previously endorsed by the D.C. Circuit.

**BLOCK 3, FORM 13 continued**

---

[4] "Egregious" is not a synonym for "unreasonable" and "unreasonable" is not a synonym for "egregious". See www.thesaurus.com

Appellant has a brain tumor and has been waiting for a hearing before the BVA for over two years. In the Petition for Writ of Mandamus, Appellant claims this delay is a violation of his due process rights. Appellant relied on this Court's property right conclusion in *Cushman v. Shinseki*:

> Veteran's disability benefits are nondiscretionary, statutorily mandated benefits. A veteran is entitled to disability benefits upon a <u>showing</u> that he meets the eligibility requirements set forth in the governing statutes and regulations. We conclude that such entitlement to benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. [underline added] *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009)

The *Martin* Court cited *Cushman*, but replaced "showing" as the enabling condition for a property interest to be protected by due process with a different criteria: "and a veteran is entitled to such benefits if he or she satisfies the eligibility requirements" *Martin* 1338, 1341   "It is well established that disability benefits are a protected property interest and may not be discontinued without due process of law. " *Cushman* 1290, 1296   However, the *Martin* Court's misstated-standard adopts only that "well established" from *Cushman* ,i.e. that the initiation of due process protection begins only after the grant of benefits by the Secretary rather than upon the *Cushman* standard of "showing". The Constitutional question Appellant presents to this Court asks if the prior *Cushman* "showing" is all that is necessary for a due process interest or if under *Martin* the actual grant of benefits by the Secretary is necessary for due process protection?

The *Cushman* Court found: "Although the due process question is one of first impression for this court, the Ninth Circuit has previously held that "both applicants for and recipients of [service-connected death and disability] benefits possess a constitutionally protected property interest in those benefits."" [underline added] *Cushman* 1290, 1297  And the *Cushman* Court cited the dissent of Judge Gajarsa, joined by Judges Mayer and Newman in *Cook v. Principi* , concluding that the statutory mandate of veteran disability benefits entitles applicants to procedural due process. *Cushman* 1290, 1298

On the other hand, the *Cushman* Court continued: "Additionally, seven of our sister circuits have addressed similar questions concerning statutorily mandated benefits. "Every regional circuit to address the question . . . has concluded that applicants for benefits, no less than benefits recipients, may possess a property interest in the receipt of public welfare entitlements." " [underline added]  *Cushman* 1290, 1297

These "may" opinions of these seven circuits seem consistent with Supreme Court guidance:

> Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for

a person to vindicate those claims. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)

38 USC 5103A(a) and CFRs wonderfully track into *Roth*. 38USC 5103A(a)(1) assigns a duty-to-assist to the Secretary which seems to establish a statutory presumption of a "legitimate claim". 38 USC 5103A(a)(2) then relieves the Secretary of that duty if a claim has no reasonable possibility of success which seems the restatement of "more than an abstract need or desire". Finally, 38 USC 5103A(a)(3) relieves the Secretary of that duty if the veteran fails to provide the "essential information" necessary for a "legitimate claim of entitlement" and 38 CFR 3.159(a)(3) defines what constitutes a "substantially complete application" or "claim". 38 CFR 3.103(d) states the veteran's right to a hearing upon submission of a claim. 38 USC 5103A supported by 38 CFR 3.159 and 38 CFR 3.103 reflect a scheme that meets the conditions of *Roth*. The fair conclusion is that a veteran acquires a property interest protected under the due process clause of the 5th Amendment upon application for disability benefits..

Appellant argues this Court should adopt the rule of the 9th Circuit that the property interest of veterans is protected by due process upon application for disability benefits. Such a ruling is consistent with the *Cushman* standard of "showing"; consistent with the Supreme Court's requirement of having only a "legitimate claim" as distinguished from *Martin's* "proved claim"; that 38 CFR 3.159(a)(3) defines what constitutes a "substantially complete application" which

seems the sufficiency condition to establish the Supreme Court's "legitimate claim"; honors the "ancient institution of property to protect those claims upon which people [veterans] rely in their daily lives" by timely decision making; that there is a multitude of veteran service organizations who provide a filtering function to weed out impossible claims as they assist veterans in the preparation of claims; and the long recognized character of veterans' benefits statutes as strongly and uniquely pro-claimant. See for instance *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980)

Descending from the broad question of when due process for veterans disability claims begins, in case at bar Appellant argues he has satisfied both the *Cushman* "showing" and the Supreme Court's *Roth* requirement in that he has made a "legitimate claim of entitlement". Attached to the original Petition was a letter from Appellant's physician[5], and Footnote 2 of Appellant's Petition for Mandamus explains that letter's purpose:

> In the instant case, the showing is attached to this petition as a letter from Dr. Lim, the physician who diagnosed my brain tumor and stated it is more likely than not that the tumor manifested prior to my retirement from active duty. Dr. Lim has departed Johns Hopkins University Hospital and is currently the chairman of the neurosurgical service of Stanford University Hospital. Dr. Lim would easily qualify as an "outside expert" envisioned by 38 CFR 3.328. In short that single letter is both a "showing" that invokes

---

[5] This letter is over the signature of Dr. Lim's physicians assistant, signed by her as both a ministerial responsibility and as a second neurosurgical professional.

due process and further, satisfies all the requirements of 38 CFR 3.309(a) to establish service connection. Petitioner's mandamus asks that the "property interest" of the veteran that is protected by the Due Process Clause be honored.

Appellant asks this Court to lay the letter from Dr. Lim side-by-side with 38 CFR 3.309 to decide if that evidence is sufficient for a due process showing, and even further, for the establishment of service connection for a specified chronic disease being my brain tumor.

Lastly, the *Martin* Court adopted the reasoning of the D.C. Circuit that subordinates the Constitutional protection of a veteran's due-process property interest to the satisfaction of a statute:

> "a claim that a plaintiff has been denied due process because of delayed agency action is essentially no different than an unreasonable delay claim; indeed, if there is any difference at all, it is that an unreasonable delay claim would likely be triggered prior to a delay becoming so prolonged that it qualifies as a constitutional deprivation of property." *Martin* 1338, 1348

Under *Cushman* due process is established by a "showing" and not upon a test against some statutory requirement as opined by the D.C, Circuit. Restating *Roth*:

> It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)

The *TRAC* method was adopted by the *Martin* Court only after waving-away the veteran's claim of the Constitutional protection of a due-process property interest, and endorses the arbitrarily delaying of benefits upon which veterans rely in their daily lives. Appellant urges the Court to adopt the rule of the 9th Circuit that a

veteran acquires a property right protected by due process upon application for benefits.

A second Constitutional issues addresses the function of the Veterans Court under Article I. Appellant relies upon *Ex Parte Bakelite Corp'n,* 279 U.S. 438 (1929). The Veterans Court is an Article I court and is forbidden entry into the judicial function of the United States created in Section 1of Article III. Beyond that restriction the power of an Article I court are those defined by Congress with jurisdiction directed to the execution of one or more of its legislative powers. In contrast, Article III courts can only exercise the judicial function of the United States, limited by Section 2 of Article III, and can be invested with no other jurisdiction.

The Veterans Court self-limits its jurisdiction to the detriment of veterans. The Veterans Court writes:

> This Court adheres to the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Cardona v. Shinseki,* 26 Vet.App. 472, 474 (2014) (per curiam order); *Mokal v. Derwinski,* 1 Vet.App. 12, 13 (1990)" [underline added] *Godsey v. Wilkie,* 31 Vet.App. 207,218 (2019)

This voluntary adherence by the Veterans Court to the case-or-controversy doctrine found in Section 2 is a forbidden limitation of its own jurisdiction:

> "Notwithstanding these substantial institutional interests, federal courts are vested with a "virtually unflagging obligation" to exercise the jurisdiction

given them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976). "We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given." *Cohens v. Virginia, 6 Wheat.* 264, 404 (1821)" *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)

The Veterans Court's jurisdiction is defined in 38 USC 7252 within the scope of 38 USC7261 and is unconstrained by Section 2 of Article III.

Judge Moore in a concurring opinion begins with: "we once again find ourselves faced with the fundamentally flawed program that is the veterans' disability benefits system." *Martin* 1338, 1349   Judge Moore continues later:

> Under separation of powers, we do not have the authority to require the Secretary to take specific actions to fix these many problems across all veterans' cases—an action desperately needed. Instead, we are constrained to the facts of the particular cases in front of us. However, the proceedings in these cases illustrate the fundamental problems with the system—problems that have been acknowledged by the VA. Although the systemic resolution of these matters is not within the scope of this court's authority, there is little doubt as to the President's ability to take action. [underline added]   *Martin* 1338, 1351

The underlined text is the Article III cases-or-controversies doctrine restriction, a restriction that the Veterans Court improperly adopts to itself.

The *Martin* Court writes in harmony of its recognition of the Section 2 constraint: "In sum, Appellants' petitions ask the Veterans Court to broadly declare that the entire process is unconstitutional. Cf. *Norton v. S. Utah Wilderness All.* , 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (noting that a claim under § 706(1) of the APA is limited to "discrete agency action" and

precludes a "broad programmatic attack")." [underline added] *Martin* 1338, 1348

Two points. First, the underlined prohibition from *Norton* against broad

programmatic attack is the Section 2 Article III cases-or-controversies prohibition

expressed by Judge Moore; however, that prohibition is not binding on the Article

I Veterans Court created, empowered and constrained only by Title 38. Second,

the *Norton* case law prohibition is based on 5 USC 706, demonstrating again the

non-congruence of 5 USC 706 with 38 USC 7261 discussed in BLOCK 2 (statute

interpretation). For clarity, Appellant's mandamus does not ask the entire process

be declared unconstitutional, rather provides a remedy to the Secretary's

unreasonable delay of deciding veteran disability claims available to the Veterans

Court under current statute.

The Veterans Court's improper adherence to Section 2 results in the

limitation of its "compel action" authority over the Secretary.

## BLOCK 4, FORM 13 continued

Secretary McDonough, the current VA Secretary, has provided a completely

sound criteria for "unreasonable delay" and the Court should yield to the

Secretary's expressed criteria. See *Chevron v. Natural Resources Defense

Council*, 467 U.S. 837 (1984) "a court may not substitute its own construction of a

statutory provision for a reasonable interpretation made by the administrator of an

agency." See *Heckler v. Chaney*, 470 U.S. 832 (1985) "Similar concerns animate

the principles of administrative law that courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute." The Secretary presented to the Veterans Court a criteria for reasonable delay that the Secretary used to defeat a veteran's petition[6]. As the Secretary wrote in his Response:

> "*Bullock v. Brown, 7 Vet.App. 69 (1994); Erspamer, 1 Vet.App. at 10* (noting that a reasonable delay may include delay of months or "occasionally a year or two," and that a delay of more than a decade was unreasonable)."

Attached to the original Petition for Writ of Mandamus is page 7 of the Secretary's *Brooks* Response with hand-written notes and emphasis added by Petitioner. Note the Secretary first states his criteria for reasonable delay and then states his decision against the veteran based upon his stated criteria.

The Secretary under 38 USC 501 will " prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department". Additionally, the Secretary is the author of the M21-1 Manual that dictates the internal procedures regarding how disability claims are resolved. The Secretary is in the unique and authoritative position to know how long his claims processing system should reasonably require and the point at which delay becomes

---

[6]*Edwin H. Brooks v. Denis McDonough*, CAVC Case 20-7879 Secretary's Response, Page 7, filed 12/16/2020. unpublished

unreasonable. And the Secretary has full authority under 38 USC 501 to fix whatever is not working in his system so that his system reports results within his criteria of reasonable time. Not the veteran nor Congress nor the AMA is to blame for the Secretary's broken system. Under the *Auer* doctrine the Secretary should be held to his "unreasonable delay" standard that he presented to the Veterans Court.

> Although *Auer* ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation, <u>even when that interpretation is advanced in a legal brief,</u> see *Chase Bank USA, N.A. v. McCoy*, 562 U.S. ——, ——, 131 S.Ct. 871, 880, 178 L.Ed.2d 716 (2011); Auer,519 U.S., at 461–462, 117 S.Ct. 905, this general rule does not apply in all cases. [underline added] *Christopher v. Smithkline Beecham Corp.*, 567 U.S. 142, 155 (2012)

Similarly, under the doctrine of equitable estoppel, the Secretary should not be permitted offer "situational" statutory interpretations of "unreasonable delay", convenient only for case at bar. Adoption of the Secretary's criteria clarifying the ambiguous term "unreasonable delay" seems required by this Court's decision in *McKnight v. Gober*, 131 F.3d 1483, 1485(Fed. Cir. 1997) (noting that, where statute is ambiguous, "interpretive doubt is to be resolved in the veteran's favor" (citing *Brown v.Gardner*, 513 U.S. 115,118 (1994)).

The *Martin* Court relied heavily upon the D.C. Circuit's analysis. The criteria adopted by the Secretary and presented by the Secretary to the Veterans Court finds its legitimacy in D.C. Circuit case law:

While there is no absolute definition of what is reasonable time, we know that it may encompass 'months, occasionally a year or two, but not several years or a decade." *Community Nutrition Institute v. Young*, 773 F.2d 1356, 1361 (D.C.Cir.1985) (quoting *MCI Communications Corp. v. FCC*, 627 F.2d 322, 340 (D.C.Cir.1980)

The Veterans Court is not only silent on the Secretary's criteria advanced in legal briefs, but sufficiently aloof as to not even ask the Secretary to explain his representation made in filings to that court.

## BLOCK 5, FORM 13 continued

Appellant has a brain tumor and has been waiting for over two years for a hearing before the BVA. Appellant petitioned the Veterans Court for Mandamus seeking relief from the unreasonable delay in the receipt of disability benefits. This section explains the mandamus, but first, a description of the disability claims process a veteran must traverse. Judge Moore explained:

> In the cases before us today, we once again find ourselves faced with the fundamentally flawed program that is the veterans' disability benefits system. Established with the intent of serving those who have served their country, the veterans' disability benefits system is meant to support veterans by providing what are often life-sustaining funds. Instead, many veterans find themselves trapped for years in a bureaucratic labyrinth, plagued by delays and inaction. *Martin v. O'Rourke*, 891 F.3d 1338, 1349 (Fed. Cir. 2018)

And two years later after implementation of the AMA Judge Reyna concluded:

> The VA concedes that veterans, "[w]hen they [appeal]—whether they know it or not—will enter into a process that takes years, sometimes decades, to complete ... jump[ing] through hoops, absorb[ing] dozens of letters, fill[ing]

out confusing paperwork, and learn[ing] to live with waiting." J.A. 466. This delay is unacceptable. *Monk v. Wilkie*, 978 F.3d 1273, 1278 (Fed. Cir. 2020)

In BLOCK 3 (Constitutional issues) Appellant has made a "showing" under

*Cushman* that he has a property interest protected by the due process clause of the

5th Amendment, and as Judges Moore and Reyna explain, the Secretary is unable

to timely provide the nondiscretionary, statutorily mandated benefits to this

Veteran. The remedy Appellant seeks does not attempt to fix the broken VA, but

seeks only his timely enjoyment of his long-delayed disability benefits that are his

property interest protected by the due process clause of the 5th Amendment. The

Secretary has the authority under 38 USC 503 to execute the mandamus.

Appellant represents only himself yet the mandamus sought is far reaching

in its effect of other veterans. The breadth is necessary to be compliant with this

Court's prior rulings. The mandamus repeated:

> An Order to the Secretary that directs the Secretary to provide temporary disability benefits to the maximum benefit possible to all veterans with pending disability claims beginning two years after the filing of the NOD to the Board of Veterans Appeals with an effective payment date as established under the current regulation. Any pending appeal-receiving-payment will remain active on the docket of the Board of Veterans Appeals until the claim is finally approved or denied by the Secretary in regular order. The final denial of the claim will result in the termination of the temporary benefit with an effective date being the denial date.

The Veterans Court incorrectly regarded this mandamus as a class-action; that

said, Appellant being *pro se* again invokes *Robertson*. To be blunt, this veteran

will be happy to accept the payment of temporary benefits in an individual capacity. However, the purpose of the broad scope of this mandamus is the attempt to formulate a judicially efficient solution that satisfies the concerns of this Court's disdain for line jumping:

> We question the appropriateness of granting individual relief to veterans who claim unreasonable delays in VA's first-come-first-served queue. Granting a mandamus petition in such circumstances may result in no more than line-jumping without resolving the underlying problem of overall delay. *See, e.g.*, *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991) (rejecting mandamus petition to advance an FDA application because "a judicial order putting [petitioner] at the head of the queue simply moves all others back one space and produces no net gain"). *Ebanks v. Shulkin*, 877 F.3d 1037, 1039-40 (Fed. Cir. 2017)

As this Court points out, any remedy that calls for accelerated action for the single veteran by the Secretary results in slower action for every veteran already ahead in the queue, i.e. a reverse class action with detriment to veterans who have not filed for mandamus. However, given a workable standard for "unreasonable delay" by this Court, the Veterans Court can fix the problem for all, or can deal individually with each veteran. And as Judge Moore advises: "the takeaway from all this is quite simple: hiring a lawyer and filing a mandamus petition forces the VA to act". *Martin* 1338, 1352

**BLOCK 6, FORM 13 continued**

In *Martin* Judge Moore stated "we once again find ourselves faced with the fundamentally flawed program that is the veterans' disability benefits system"

*Martin* 1338, 1349 and "the least we can do is properly resolve their disability claims" *Martin* 1338, 1352 And Judge Reyna stated "This delay is unacceptable." *Monk* 1273, 1278   This veteran who stood at the ramparts is now the whipping boy of a Secretary who has the duty, yet is incapable of providing disability decisions in a timely manner.  The actions below that Appellant seeks will provide helpful guidance to the Veterans Court allowing for the provision of benefits unreasonably delayed to this Veteran.

1. Instruction to the Veterans Court that a veteran acquires a property interest protected by the due process clause of the 5th Amendment upon application via the submission of a claim meeting the standard of 38 CFR 3.159(a)(3).

2. Instruction to the Veterans Court that the court is created under Article I of the Constitution and their voluntary adherence to Section 2 Article III is a forbidden, self-created reduction of their jurisdiction.

3. Instruction to the Veterans Court that 38 USC 7261 charges the Vetereans Court as the court of original jurisdiction with the duty to protect veterans from "unreasonable delay" by the Secretary; the Congressional statutory standard of "unreasonable" controls over any mandamus requirement of "egregious".

4. Instruction to the Veterans Court that the *TRAC* factor 1 rule-of-reason for unreasonable delay is controlled by the Secretary's post-*Martin* Response filing in *Brooks*: "that a reasonable delay may include delay of months or "occasionally a

year or two," and that a delay of more than a decade was unreasonable". Under this criteria, delay of months is "reasonable", but two years of delay is presumed "unreasonable".

5. Instruction to the Veterans Court that "compel action by the Secretary" under 38 USC 7261 is broadly permissive authority allowing that Court to order the Secretary to take any corrective action authorized to the Secretary under statute.

6. Instruction to the Veterans Court that the inability of the Secretary to timely decide claims is "administrative error" that may be remedied by the Secretary with temporary payment of benefits under 38 USC 503.

7. Remand to the Veterans Court for reconsideration the Appellant's request for relief of unreasonable delay (misnamed as a Writ of Mandamus) consistent with the instructions from this Court.

8. Award costs to Appellant.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of November 2023, the foregoing materials were filed with the Court by United States Mail to the following address:

United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

I HEREBY CERTIFY that on the 20th day of November 2023, the foregoing materials were sent by United States Mail to the Respondent at the following address:

The Honorable Denis McDonough,
Secretary of Veterans Affairs

c/o General Counsel (0271), ATTN: Mr. Michael Dalin
Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, DC 20420-0002

John M. Vuksich
1553 Bayville Street
Norfolk, VA 23503
(512) 680-4048
john.vuksich@gmail.com